HENRY H. SIZER agt. JAMES MILLER, DAVID BURT, JABEZ GOODELL, ROBINSON MOREHEAD and R. H. LEE.

Where a written agreement is entered into between the parties to a suit, for the purpose of settlement, and a judgment is confessed by the defendants to the plaintiff for the amount of indebtedness, which judgment by the terms of the agreement is to be paid in a special manner, and within a stated time; the plaintiff will not be at liberty to enforce the collection of the judgment, until the defendants have had the full benefit of all the provisions of the agreement, according to its true sense and meaning.

*December Term,* 1845.

MOTION by defendant to set aside execution.

James Miller, as principal, and the other defendants, as his sureties, in 1837 made their joint and several promissory note for $12,000, which Miller negotiated with the assignees of Benjamin Rathbun; on the sale of the property and effects of Rathbun, Henry H. Sizer, the plaintiff, purchased the note. Sizer, soon after the purchase, commenced a suit in this court against the defendants upon the note; after several trials without a verdict, in order to terminate the litigation, the suit was settled, and in pursuance thereof an agreement was entered into in writing on the 14th of April, 1843, between defendant James Miller and Henry H. Sizer, the plaintiff, the principal provisions of which were, after reciting that Sizer having purchased the note under a decree of the court of chancery at public auction by the assignees of Rathbun, with the right and benefit to Sizer of a lien upon the *divi-   [*45] dend or dividends to be declared on a claim allowed to Miller against the estate of Rathbun for about $12,256, and that a *relicta* and cognovit had been given by the defendants in this suit in favor of Sizer, for the sum of $8,000 damages, and judgment was to be entered in the suit for that sum; and for the purpose of paying and discharging the judgment to be entered on the cognovit, Sizer and Miller agreed that Sizer should accept and receive the dividends on the claim in favor of Miller, at and for the sum of $7,000, and as a payment to that amount on the judgment; and Miller agreed that he would within nineteen months from that date, at his own expense, cause the title in fee simple to two parcels of land in Buffalo to be vested free from all incumbrance and right of dower in Sizer, and furnish evidence thereof to the satisfaction of Heman B. Potter and Nathan K. Hall, counsellors-at-law, Buffalo; which title should be vested either by a direct conveyance to Sizer, or by a sale under execution in the following manner. That Jabez Goodell, one of the defendants, by virtue of a judgment he then held against Miller, should cause the two parcels of land to be advertised, and sold by the sheriff of Erie county, and that Sizer should bid off the premises at $1,000; Goodell assigning to him $1,000 of the judgment for

that purpose, and Sizer should accept of the title to the premises for the sum of $1,000, to be applied in part payment and satisfaction of the judgment in this cause, and in case the premises should be redeemed, Sizer should accept the money paid on the redemption in place of the title to the premises, and in such case Miller should be discharged from his obligation to perfect the title to the premises in Sizer. Sizer should take the dividends at his own risk, except as to the acts of Miller subsequent to the original making of the note; if they were lost to Sizer in consequence of such acts of Miller, Sizer should be at liberty to collect on the judgment $6,500, with interest and expenses of collection from the date of the agreement. The agreement also provided for the payment of the costs of the suit, and that the receiver of the Commercial Bank of Buffalo should, within sixty days, approve of the agreement and give his assent to the receipt of the dividend by Sizer.

Miller stated that, in pursuance of such agreement, the defendants gave a *relicta* cognovit for $8,000, upon which a judgment was entered by Sizer. On or about the 28th November, 1843, Austin, the receiver, paid over to Sizer $7,000, the amount awarded to Miller, which amount was paid upon the judgment in this cause, leaving a balance of $1,000 to be paid as further provided by the agreement. In pursuance [*46] of the agreement, *Jabez Goodell on the 12th February, 1844, assigned to Sizer $1,000 of his judgment against Miller, that Sizer might purchase the real estate described in the agreement, and that on the 12th of February, 1844, the real estate was purchased by Sizer at sheriff's sale, under the Goodell judgment for $1,000; but in consequence of some defect in the description of the premises in the notice of sale, it was advised by N. K. Hall, Esq., to advertise anew, which was done, and the premises again sold on the 28th March, 1844, to Sizer, for $1,000. Hall, after having examined the title to the land, thought there might be doubt about it under the sale; and in order to quiet it, a motion was made (by the advice of Hall), to this court at June special

term, 1844, and both sales set aside; afterwards the same premises were again advertised and sold by the sheriff, and bid off by Sizer for $1,000, on the 1st of August, 1844. Subsequent to the time that the Goodell judgment became a lien upon the premises sold, Miller conveyed the same premises to one Haines, and Haines had conveyed his interest therein to Sizer for the purpose of perfecting the title in him pursuant to the agreement. Miller also stated that the *relicta* cognovit was given to Sizer solely, in reference to its being paid as stipulated in the agreement; and that, if, at the expiration of fifteen months from the day of sale (the 1st of August, 1844), the land should not be redeemed by judgment creditors, and the title should not be perfected in Sizer, that he (Miller) would be ready and willing to perfect it, under the direction of Potter and Hall, under whose direction the whole matter was placed by the agreement. On the 24th May last, an execution on the judgment in this cause was issued, to collect $1,000, and interest from the 14th April, 1843, and levy made on each of the defendants' property.

On the part of Sizer, it appeared from the affidavit of N. K. Hall, that on the examination of 'the certificate of search procured by Miller, it appeared that only an undivided half of the premises described in the agreement had ever been conveyed to Miller, and that only an undivided half thereof would pass under the sheriff's sale, and he so informed Miller. Miller informed him that the title to the other undivided half of the premises was in one Haines; that Miller procured a conveyance from Haines to Sizer of the undivided half of the premises, and delivered it to him for examination. On inquiry of Miller, he learned that the premises were conveyed to Haines for the purpose of enabling him (Miller) to apply them in payment of his debts, without having them bound by the dockets of judgments against him (Miller), and that Haines had, by the *understanding between him and Miller, no interest [*47] therein, but had taken a conveyance thereof under an arrangement with Miller, for the purpose mentioned, and also that Haines had in fact paid nothing for the premises and

had no interest therein, that the conveyance was held for the benefit of Miller, and to be disposed of according to Miller's directions; he also learned from Miller, that he (Miller) was considerably indebted to sundry persons at the time of such conveyance to Haines. Hall then stated to Miller that he could not certify that Sizer would get a good title under the sheriff's sale and the quit claim deed from Haines, for the reason that the persons, who were creditors of Miller at the time of the conveyance to Haines and whose debts were still unpaid, might file a bill in chancery, and on showing that Miller paid the consideration of such conveyance to Haines, and that the conveyance was made to Haines for Miller's benefit, might reach the premises in the hands of Sizer and obtain a decree for the sale thereof, and the application of the proceeds of such sale to the payment of such debts. Hall then understood from Miller and otherwise, that a creditor's bill on such debts had already been filed and was pending against Miller, and he suggested to Miller that the undivided half of the premises could be reached in such chancery suit. It further appeared from an affidavit of Dennis Bowen, law partner of N. K. Hall, that he bid off the premises for Sizer at each of the sheriff's sales, upon the representations of Miller that the premises were free and clear of all incumbrances, and that the title was in Miller; he told Miller at the time of the sale, that when the certificate of the clerk was obtained, if it should appear that there was any incumbrance upon the premises, or that the whole thereof was not bound by the judgment, that Sizer would not consider the same binding upon him. Miller in reply stated, that the purchaser under the sale would get a perfect title to the whole of the premises, and that he (Miller) was willing that the sale should be treated as void and of no effect, in case it should appear upon the examination of the certificate of search, that the title was not in him at the time of the docket of the judgment in favor of Goodell, free and clear of all incumbrance, and that the purchaser thereof would not get a perfect title to the whole of the premises. Bowen stated that soon after the last sale of the premises, he discovered that Miller was not the owner of

the whole of the premises at the time the judgment in favor of Goodell was docketed, that he then gave notice to Miller that Sizer would disregard the sale and treat the same as of no effect unless a title should be immediately perfected in Sizer, to the undivided half of the premises which *be- [*48] longed to Haines at the time the Goodell judgment was docketed. Bowen also stated that he never had any authority to extend the time for the performance of the agreement between Sizer and Miller, and never gave Miller to understand that the time would be extended for the performance of the agreement beyond the time mentioned in the agreement. Sizer stated in his affidavit, that the nineteen months given to Miller by the agreement to perfect the title to the premises therein mentioned, &c., expired on the 14th November, 1844, and that he had never extended the time limited for that object.

B. THOMPSON, *defendant's attorney.*
S. G. HAVEN, *plaintiff's attorney.*

JEWETT, Justice. The execution was irregularly issued, and must be set aside. The ground assumed by the plaintiff is, that inasmuch as Miller had neglected to cause the title in fee simple, &c., to the two parcels of land described in the agreement between them of the 14th of April, 1843, to be vested in Sizer within nineteen months from that date, and to furnish evidence thereof to the satisfaction of Potter and Hall, that Sizer was at liberty at any time thereafter to collect the $1,000 remaining after the $7,000 had been paid, by an execution on the judgment against all of the defendants. The agreement contemplated that Goodell would assign to Sizer $1,000 of his judgment against Miller, being the eldest judgment against him, under which the premises described in the agreement should be sold ; Sizer should bid the premises off at that sum, and if the premises were not redeemed and a good title in fee simple, free from incumbrances, vested in Sizer by that sale or by any other conveyance procured to him by Miller, evidence of which Miller should furnish to the satisfaction of Potter and

Hall, then the judgment was, after the payment of the $7,000, to be deemed satisfied; or if the premises should be redeemed, Sizer was to receive the money to be paid in that way, in satisfaction of the remainder of his judgment, in lieu of the title to the land, *and in that case* Miller was to be discharged from his obligation to perfect the title to the land in Sizer. It was no doubt understood between the parties, that fifteen months after the sale was the limit in which any person had the right to redeem, and to give ample time, as they supposed, to make a sale, they provided nineteen months in which a sale was to be made, time for redemption to expire, and Miller in the event that no redemption was made to cause the title to be vested, and to furnish such evidence as should satisfy Potter and Hall of that fact. But some mistake occurred, by which it became necessary that two sales made under the [*49] *Goodell judgment assigned to Sizer were set aside, at the instance and with the assent of both Miller and Sizer. A third and last sale took place on the 1st of August, 1844, at which Sizer was the purchaser at $1,000; and if he acquired a good title by that or by any other conveyance, or the premises should be redeemed, his judgment by the agreement would be satisfied, and if redeemed, Miller discharged from perfecting the title in him. The time for redemption expired on the 1st day of November, 1845; until then it could not be known whether it would be necessary for Miller to perfect the title in Sizer or not, as perhaps the sale might be redeemed. The acts of Sizer as well as the acts of Miller show clearly that the time limited to nineteen months by the agreement was extended. Miller was not in default in perfecting the title and furnishing the evidence of it, until the time for redemption had expired; which had not elapsed, within more than five months when the execution was issued. Notice of this motion was given in June, which has stood over to this term, by the consent or arrangement between the parties.

Motion granted.